# EXHIBIT G

<u>**ELECTRONICALLY FILED ON JANUARY 5, 2007**</u>  **PATENT**
**Attorney Docket No. 25981-710.**

<u>IN THE UNITED STATES PATENT AND TRADEMARK OFFICE</u>

| | |
|---|---|
| In re Application ) | |
| ) | Confirmation No.: 4798 |
| Inventors: Jim Chou et al. ) | |
| ) | Art Unit: 2143 |
| Application No.: 10/143,441 ) | |
| ) | Examiner: Jude Jean Gilles |
| Filed: May 9, 2002 ) | |
| ) | Customer No. 021971 |
| Title: Transcoding Multimedia Information ) | |
| Within a Network Communication ) | |
| System ) | |

**RESPONSE TO OFFICE ACTION**

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

**<u>Introductory Comments</u>**:

In response to the Office Action dated July 5, 2006, please amend the above-referenced application as follows:

**Amendments** to claims begin on page 2 of this paper.

**Remarks/Arguments** begin on page 9 of this paper.

1

Application No. 10/143,441
Amendment dated : Jan. 5, 2007
Reply to Office Action of July 5, 2006

**Listing of Claims:**

1. (original) A method for transcoding audio information using a service module disposed within a network communication system, the method comprising:

    breaking a connection between a transmitter and a receiver to form a first channel between the transmitter and the service module and a second channel between the service module and the receiver;

    redirecting a digital audio stream communicated from the transmitter to the receiver to the service module via the first channel, the digital audio stream encoded at the transmitter at a first transmission rate;

    estimating an available transmission rate of the second channel;

    if the first transmission rate is greater than the available transmission rate, transcoding the digital audio stream at the service module to conform the digital audio stream to the available transmission rate; and

    transmitting the transcoded audio stream from the service module to the receiver over the second channel.

2. (original) The method of claim 1, wherein the step of breaking comprises:

    terminating the connection between the transmitter and the receiver at the service module to form the first channel; and

    opening a separate connection between the service module and the receiver to form the second channel.

3. (original) The method of claim 1, wherein the step of breaking is performed in response to the connection between the transmitter and receiver matching a predetermined criteria.

4. (original) The method of claim 3, wherein the predetermined criteria comprises a set of classification rules that mask one or more fields of a header associated with the digital audio stream.

5. (original) The method of claim 1, wherein the step of redirecting comprises modifying headers of the digital audio stream to replace an original destination address and destination port with a destination address and destination port associated with the service module.

Application No. 10/143,441
Amendment dated : Jan. 5, 2007
Reply to Office Action of July 5, 2006

6. (original) The method of claim 1, wherein the step of redirecting comprises generating connection control parameters that cause data packets of the digital audio stream to be redirected to an application associated with the service module.

7. (original) The method of claim 1, wherein the step of estimating comprises measuring a smoothed round trip time of data packets communicated from the service module to the receiver via the second channel.

8. (original) The method of claim 7, wherein the step of estimating further comprises measuring a smoothed congestion window parameter associated with the second channel.

9. (original) The method of claim 8, wherein the step of estimating further comprises calculating a ratio of the smoothed round trip time and the smoothed congestion window to estimate the available transmission rate.

10. (original) The method of claim 1, wherein the step of transcoding comprises transcoding a sequence of frames of the digital audio stream such that an average transmission rate of the frame sequence approximates the estimated available transmission rate.

11. (original) The method of claim 10, wherein the step of transcoding comprises transcoding the sequence of frames such that frames that occur earlier in the frame sequence are transcoded at a higher transmission rate than frames that occur later in the frame sequence.

12. (original) The method of claim 10, wherein the step of transcoding comprises transcoding the sequence of frames such that frames having a higher perceptual entropy are transcoded at a higher transmission rate than frames having a lower perceptual entropy.

13. (original) The method of claim 1, wherein the step of transcoding comprises:
    requesting a plurality of versions of the digital audio stream from the transmitter, each version encoded at a different transmission rate; and
    multiplexing between the plurality of versions to form a sequence of frames that have an average transmission rate that approximates the estimated available transmission rate.

14. (original) The method of claim 1, wherein the step of transcoding comprises:
    decoding the digital audio stream at the service module; and
    re-encoding the decoded audio stream at a lower transmission rate.

15.     (original) The method of claim 1, wherein the step of transcoding comprises removing high frequency code words from selected frames of the digital audio stream to form a sequence of frames that have an average transmission rate that approximates the estimated available transmission rate.

16.     (original) The method of claim 1, wherein the step of transcoding comprises mapping code words from selected frames of the digital audio stream to a decimated set of code words having coarser quantization to form a sequence of frames that have an average transmission rate that approximates the available transmission rate.

17.     (original) The method of claim 1, wherein the step of transmitting comprises transmitting the transcoded audio stream from the service module to the receiver in a manner transparent to the receiver.

18.     (original) The method of claim 17, wherein the step of transmitting comprises transmitting the transcoded audio stream from the service module using a source address and source port associated with the transmitter.

19.     (original) The method of claim 1, wherein the step of transmitting comprises using a transmission timer to provide timer-based data flow control, the period of the timer determined from the estimated available transmission rate.

20.     (original) The method of claim 1, further comprising embedding additional information within the transcoded digital audio stream.

21.     (original) The method of claim 20, wherein the step of embedding comprises embedding the additional information using a watermarking technique.

22.     (original) The method of claim 20, wherein the embedded information comprises at least one of a forward error correction code, synchronization information and ancillary information regarding the digital audio stream.

23.     (original) A method for transcoding multimedia information within a network communication system, the method comprising:

intercepting digital multimedia information communicated between a transmitter and a receiver, the digital multimedia information encoded at the transmitter at a first transmission rate;

Application No. 10/143,441
Amendment dated : Jan. 5, 2007
Reply to Office Action of July 5, 2006

estimating an available transmission rate of a receiver-side connection;

if the first transmission rate is greater than the available transmission rate, transcoding the digital multimedia information to conform the digital multimedia information to the available transmission rate; and

transmitting the transcoded multimedia information to the receiver over the receiver-side connection at a transmission rate determined from the estimated available transmission rate.

24. (original) The method of claim 23, wherein the step of transcoding comprises transcoding a sequence of frames of the digital multimedia information such that an average transmission rate of the frame sequence approximates the estimated available transmission rate.

25. (original) The method of claim 24, wherein the step of transcoding comprises transcoding the sequence of frames such that frames that occur earlier in the frame sequence are transcoded at a higher transmission rate than frames that occur later in the frame sequence.

26. (original) The method of claim 24, wherein the step of transcoding comprises transcoding the sequence of frames such that frames having a higher perceptual entropy are transcoded at a higher transmission rate than frames having a lower perceptual entropy.

27. (original) The method of claim 23, wherein the step of transcoding comprises:

requesting a plurality of versions of the digital multimedia information from the transmitter, each version encoded at a different transmission rate; and

multiplexing between the plurality of versions to form a sequence of frames that have an average transmission rate that approximates the estimated available transmission rate.

28. (original) The method of claim 23, wherein the step of transcoding comprises:

decoding the digital multimedia information; and

re-encoding the decoded multimedia information at a lower transmission rate.

29. (original) The method of claim 23, wherein the step of transcoding comprises removing high frequency code words from selected frames of the digital multimedia information to form a sequence of frames that have an average transmission rate that approximates the estimated available transmission rate.

Application No. 10/143,441
Amendment dated : Jan. 5, 2007
Reply to Office Action of July 5, 2006

30.     (original) The method of claim 23, wherein the step of transcoding comprises mapping code words from selected frames of the digital multimedia information to a decimated set of code words having coarser quantization to form a sequence of frames that have an average transmission rate that approximates the available transmission rate.

31.     (original) The method of claim 23, wherein the step of transmitting comprises transmitting the transcoded multimedia information to the receiver in a manner transparent to the receiver.

32.     (original) The method of claim 31, wherein the step of transmitting comprises transmitting the transcoded multimedia information using a source address and source port associated with the transmitter.

33.     (original) The method of claim 23, wherein the step of transmitting comprises using a transmission timer for regulating the transmission of each data packet, the transmission timer having the period determined from the estimated available transmission rate.

34.     (original) The method of claim 23, further comprising embedding additional information within the transcoded digital multimedia stream.

35.     (original) The method of claim 34, wherein the step of embedding comprises embedding the additional information using a watermarking technique.

36.     (original) The method of claim 34, wherein the embedded information comprises at least one of a forward error correction code, synchronization information and ancillary information regarding the digital multimedia information.

37.     (original) A system for transcoding multimedia information within a network communication system, the system comprising:

    a processor; and

    a memory unit, operably coupled to the processor, for storing instructions which when executed by the processor cause the processor to operate so as to:

        intercept digital multimedia information communicated between a transmitter and a receiver, the digital multimedia information encoded at the transmitter at a first transmission rate;

        estimate an available transmission rate of a receiver-side connection;

Application No. 10/143,441
Amendment dated : Jan. 5, 2007
Reply to Office Action of July 5, 2006

> if the first transmission rate is greater than the available transmission rate, transcode the digital multimedia information to conform the digital multimedia information to the available transmission rate; and
>
> transmit the transcoded audio stream to the receiver over the receiver-side connection at a transmission rate determined from the estimated available transmission rate.

38. (original) The system of claim 37, wherein the instructions which cause the processor to operate so as to transcode cause the processor to operate so as to transcode a sequence of frames of the digital multimedia information such that an average transmission rate of the frame sequence approximates the estimated available transmission rate.

39. (original) The system of claim 38, wherein the instructions which cause the processor to operate so as to transcode cause the processor to operate so as to transcode the sequence of frames such that frames that occur earlier in the frame sequence are transcoded at a higher transmission rate than frames that occur later in the frame sequence.

40. (original) The system of claim 38, wherein the instructions which cause the processor to operate so as to transcode cause the processor to operate so as to transcode the sequence of frames such that frames having a higher perceptual entropy are transcoded at a higher transmission rate than frames having a lower perceptual entropy.

41. (original) The system of claim 37, wherein the instructions which cause the processor to operate so as to transcode cause the processor to operate so as to:

> request a plurality of versions of the digital multimedia information from the transmitter, each version encoded at a different transmission rate; and
>
> multiplex between the plurality of versions to form a sequence of frames that have an average transmission rate that approximates the estimated available transmission rate.

42. (original) The system of claim 37, wherein the instructions which cause the processor to operate so as to transcode cause the processor to operate so as to:

> decode the digital multimedia information; and
>
> re-encode the decoded multimedia information at a lower transmission rate.

43. (original) The system of claim 37, wherein the instructions which cause the processor to operate so as to transcode cause the processor to operate so as to remove high

Application No. 10/143,441
Amendment dated : Jan. 5, 2007
Reply to Office Action of July 5, 2006

frequency code words from selected frames of the digital multimedia information to form a sequence of frames that have an average transmission rate that approximates the estimated available transmission rate.

44.   (original) The system of claim 37, wherein the instructions which cause the processor to operate so as to transcode cause the processor to operate so as to map code words from selected frames of the digital multimedia information to a decimated set of code words having coarser quantization to form a sequence of frames that have an average transmission rate that approximates the available transmission rate.

45.   (original) The system of claim 37, wherein the instructions which cause the processor to operate so as to transmit cause the processor to operate so as to transmit the transcoded multimedia information to the receiver in a manner transparent to the receiver.

46.   (original) The system of claim 37, wherein the instructions which cause the processor to operate so as to transmit cause the processor to operate so as to transmit the transcoded multimedia information using a source address and source port associated with the transmitter.

47.   (original) The system of claim 37, wherein the instructions which cause the processor to operate so as to transmit cause the processor to operate so as to transmit data packet in response to expiration of a transmission timer, the transmission timer having a period determined from the estimated available transmission rate.

48.   (original) The system of claim 37, wherein the memory unit further includes instructions which cause the processor to operate as to embed additional information within the transcoded multimedia stream.

49.   (original) The system of claim 48, wherein the instructions which cause the processor to operate so as to embed cause the processor to operate so as to embed the additional information using a watermarking technique.

50.   (original) The system of claim 48, wherein the embedded information comprises at least one of a forward error correction code, synchronization information and ancillary information regarding the digital multimedia information.

Application No. 10/143,441
Amendment dated : Jan. 5, 2007
Reply to Office Action of July 5, 2006

## REMARKS/ARGUMENTS

### Claim Rejection of Claims 1-50 Under 35 U.S.C. §103(a)

In the Office Action mailed July 5, 2006 ("Office Action"), claims 1-50 were rejected under 35 U.S.C. § 103(a) as being unpatentable over U.S. Patent No. 6,157,634 ("Mehta") in view of U.S. Patent No. 6,397,230 ("Carmel"). Applicants respectfully traverse the rejection.

The Office Action recognizes that the Mehta reference does not include:

> estimating an available transmission rate of the second channel; and
> if the first transmission rate is greater than the available transmission rate, transcoding the digital audio stream at the service module to conform the digital audio stream to the available transmission rate;

The previous office action argued that this deficiency of Mehta was taught by the reference U.S. Patent No. 6,732,183 ("Graham"). However, Applicants showed that such deficiency in Mehta is not remedied by Graham. Now, the current Office Action no longer asserts Graham, but argues that the deficiency is taught by a new reference, namely Carmel. However, for the reasons shown below, Carmel also fails to remedy the deficiency of Mehta.

The Office Action argues that it would have been obvious to one of ordinary skill in the networking art at the time the invention was made to incorporate Carmel's teaching of estimating transmission rate, with the teachings of Mehta, "...to provide apparatus and methods for developing multimedia applications suitable for transfer at a predetermined bandwidth... to provide methods for estimating the size and transfer rate of a multimedia application..." as stated by Carmel in lines 61-67 of column 1. Applicants believe that the Office Action mischaracterizes the referenced Carmel, and that even in combination, the references of Mehta and Carmel fail to teach all of the elements of claim 1.

For example, the Office Action cites Carmel, column 4, lines 34-67 and argues that Carmel teaches estimating the claimed transmission rate. However, Carmel teaches to "receive an estimate of the transmission rate required for a smooth real-time appearance of a multimedia application...." (Carmel, column 4, lines 35-36) (emphasis added). However, Carmel's teaching of receiving an estimate a required transmission rate is a completely different teaching than estimating an available transmission rate of a channel. Thus, Carmel is performing a completely

Application No. 10/143,441
Amendment dated : Jan. 5, 2007
Reply to Office Action of July 5, 2006

different function, that of estimating a rate that would be <u>required</u>, for smooth real-time appearance of a multimedia application, as opposed to estimating the respective <u>available</u> rate <u>of the respective channel</u>.

Further, neither Mehta nor Carmel teaches "<u>if</u> the first transmission rate <u>is greater</u> than the available transmission rate, transcoding the digital audio stream at the service module to conform the digital audio stream to the <u>available</u> transmission rate." In contrast, Carmel teaches determining an "estimate of the transmission rate required for smooth real-time appearance of a multimedia application <u>required</u>... ." (Carmel at column 4 lines 35-36) (emphasis added). Thus, neither of the references teaches transcoding a digital audio stream, <u>if</u> the first transmission rate is <u>greater than</u> the <u>available</u> transmission rate.

Thus, even in combination, the references fail to teach all of the elements of claim 1. Thus, the Office Action has failed to establish a prima facie case of obviousness in accordance with MPEP 2143.03, which requires that all claimed limitations must be taught or suggested. MPEP 2143.03 ("To establish prima facie obviousness of a claimed invention, <u>all the claim</u> limitations must be taught or suggested by the prior art.") (emphasis added). Thus, for more than one reason, it is believed that the Office Action has failed to establish a case of prima facie obviousness with respect to claim 1.

Claims 2-22 depend from claim 1. Such claims are rejected based on the same reasoning as claim 1, and it is believed that such rejection has been overcome as discussed above. Therefore, it is believed that the rejection of such claims should also be removed and such action is respectfully requested. Additionally, it is believed that such claims also set forth configurations not taught or suggested by the references and are therefore also independently patentable.

The Office Action indicates that the same motivation that was used for claim 1 was also used to reject claim 23. The rationale that was used to reject claim 1 has been overcome as set forth above. Therefore it is believed that the rejection of claim 23 should also be removed.

Claims 24-36 depend from claim 23. Such claims were rejected based on the same reasoning as to claim 1, and it is believed that such rejection has been overcome as discussed above. Therefore, it is believed that the rejection of such claims should also be removed and such

Application No. 10/143,441
Amendment dated : Jan. 5, 2007
Reply to Office Action of July 5, 2006

action is respectfully requested. Additionally, such claims are therefore also independently patentable.

Claim 37 was rejected based on similar reasoning as to claims 1 and 23. Therefore, it is believed that the rejection of claim 37 has been overcome for the reasons discussed above.

Claims 38-50 depend from claim 37. Such claims are rejected based on the same reasoning as to claim 1, and it is believed that such rejection has been overcome as discussed above. Therefore, it is believed that the rejection of such claims should also be removed and such action is respectfully requested. Additionally, it is believed that such claims also set forth configurations not taught or suggested by the references and are therefore also independently patentable.

**Piecemeal Examination**

Applicants point to the MPEP recommendation to avoid piecemeal examination as much as possible. See MPEP § 707.07(g). Applicants note that Applicants overcame rejection of the claims in the previous action and that the current Office Action provides a new, non-final rejection of the claims based on new art. It is noted that the MPEP prescribes that only the best references should be used. See MPEP § 904.03. Applicants welcome a thorough search. However, in the interest of expeditious processing of the present application to allowance, Applicants request that the Examiner assert any relevant art at the earliest opportunity.

Application No. 10/143,441
Amendment dated : Jan. 5, 2007
Reply to Office Action of July 5, 2006

## CONCLUSION

In light of the remarks set forth above, Applicants believe that they are entitled to a letters patent. Applicants respectfully solicit the Examiner to expedite the prosecution of this patent application to issuance. Should the Examiner have any question, the Examiner is encouraged to telephone the undersigned.

The Commissioner is authorized to charge any additional fees which may be required, including petition fees and extension of time fees, to Deposit Account No. 23-2415 (Docket No. 25981-710).

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI

Date: January 5, 2007

George A. Willman
Reg. No. 41,378

650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300
Customer No. 021971