# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

OptiMorphix, Inc.,

    *Plaintiff,*

  v.

Oracle Corporation,

    *Defendant.*

Civil Action No. 1:23-cv-1249-MN

**JURY TRIAL DEMANDED**

**PLAINTIFF OPTIMORPHIX, INC.'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................... 1

II.     NATURE AND STAGE OF PROCEEDINGS.................................................... 1

III.    SUMMARY OF ARGUMENT ............................................................................ 1

IV.     THE COMPLAINT SUFFICIENTLY PLEADS DIRECT INFRINGEMENT ........................................ 2

        A.    The Complaint Adequately Alleges Direct Infringement Of The '314 Patent ............. 4

        B.    The Complaint Adequately Alleges Direct Infringement Of The '871 Patent ............. 5

        C.    The Complaint Adequately Alleges Direct Infringement Of The '169 Patent ............. 7

        D.    The Complaint Adequately Alleges Direct Infringement Of The '021 Patent ............. 9

        E.    The Complaint Adequately Alleges Direct Infringement Of The '273 Patent ........... 11

        F.    The Complaint Adequately Alleges Direct Infringement Of The '901 Patent ........... 13

        G.    The Complaint Adequately Alleges Direct Infringement Of The '418 Patent ........... 15

        H.    The Complaint Adequately Alleges Direct Infringement Of The '664 Patent ........... 17

V.      THE COMPLAINT SUFFICIENTLY PLEADS CLAIMS FOR INDIRECT INFRINGEMENT ............... 19

VI.     THE CASE IS NEITHER BURDENSOME NOR ADMINISTRATIVELY COMPLEX ........................ 20

VII.    CONCLUSION ................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*10X Genomics, Inc. v. Vizgen, Inc.*,
654 F. Supp. 3d 310 (D. Del. 2023)................................................................... 2

*Barrier1 Sys. v. RSA Protective Techs., LLC*,
2021 U.S. Dist. LEXIS 193823 (D. Del. Oct. 7, 2021) ........................................... *passim*

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) .......................................................................... 2

*CoolTVNetwork.com, Inc. v. Facebook, Inc.*,
2019 U.S. Dist. LEXIS 157841 (D. Del. Sep. 16, 2019) ....................................... 10

*Deston Therapeutics LLC v. Trigen Labs., Inc.*,
723 F. Supp. 2d 665 (D. Del. 2010)............................................................... 4, 14

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
888 F.3d 1256 (Fed. Cir. 2018) ....................................................................... 2

*Express Mobile, Inc. v. Squarespace, Inc.*,
2021 U.S. Dist. LEXIS 161259 (D. Del. Aug. 25, 2021) ...................................... 1

*Grayson v. Mayview State Hosp.*,
293 F.3d 103 (3d Cir. 2002)........................................................................... 18

*Nncrystal US Corp. v. Nanosys, Inc.*,
2020 U.S. Dist. LEXIS 22462 (D. Del. Feb. 10, 2020) ........................................ 3

*Novartis Pharms. Corp. v. Actavis, Inc.*,
2012 U.S. Dist. LEXIS 176445 (D. Del. Dec. 5, 2012)........................................ 4

*Par Pharm., Inc. v. Hospira, Inc.*,
2018 U.S. Dist. LEXIS 114588 (D. Del. Apr. 27, 2018)........................................ 9

*Promos Techs., Inc. v. Samsung Elecs. Co.*,
2018 U.S. Dist. LEXIS 186276 (D. Del. Oct. 31, 2018) ....................................... 2

**RULES**

Fed. R. Civ. P. 12(b)(6)................................................................................ 2, 3

## I.     INTRODUCTION

Plaintiff OptiMorphix, Inc. ("OptiMorphix") owns, and alleges Oracle Corporation ("Oracle" or "Defendant") infringes, each of U.S. Patent Nos. 7,031,314 (the "'314 Patent"), 7,099,273 (the "'273 Patent"), 7,444,418 (the "'418 Patent"), 7,586,871 (the "'871 Patent"), 8,429,169 (the "'169 Patent"), 8,521,901 (the "'901 Patent"), 9,167,021 (the "'021 Patent"), and 9,191,664 (the "'285 Patent"), 7,991,904 (the "'904 Patent"), 8,230,105 (the "'105 Patent"), 8,769,141 (the "'664 Patent") (collectively, the "Asserted Patents").  (D.I. 1 at ¶¶ 16, 23, 34, 40, 47, 54, 62, 70, 77-279.)  Oracle designs, makes, uses, sells, and/or offers for sale products covered by the Asserted Patents.  (*Id.* ¶¶ 78-79, 105-106, 134-135, 160-161, 182-183, 208-209, 229-230, 254-255.)  For the reasons set forth below, Oracle's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (D.I. 9 "Motion" or "Mot.") should be denied.

## II.     NATURE AND STAGE OF PROCEEDINGS

OptiMorphix filed the Complaint on November 1, 2023.  (D.I. 1.)  Oracle filed its Motion on January 18, 2024.  (D.I. 8, 9.)  The Court has not yet entered a Scheduling Order.

## III.     SUMMARY OF ARGUMENT

1.     The Complaint sufficiently pleads direct infringement of the Asserted Patents.  The Complaint identifies the patents at issue, along with the accused Oracle products and how they infringe.  "The Complaint need not allege 'specific facts' to meet the plausibility pleading standard, but must put the alleged infringer on fair notice of the claim of infringement and the grounds upon which it rests.  Here, there are sufficient factual allegations of infringement to meet that standard and put [Oracle] on notice of the grounds of its alleged infringement."  *Express Mobile, Inc. v. Squarespace, Inc.*, 2021 U.S. Dist. LEXIS 161259, at *4-5 (D. Del. Aug. 25, 2021).

2.      OptiMorphix's Complaint plausibly pleads claims for indirect infringement because the claims for direct infringement are sufficiently alleged.  And the fact that the Complaint

includes infringement claims for eight Asserted Patents does not somehow render this case burdensome or administratively complex, as Oracle wrongly, and without support, suggests.

## IV.   THE COMPLAINT SUFFICIENTLY PLEADS DIRECT INFRINGEMENT

For purposes of Rule 12(b)(6), a plaintiff need only allege facts giving rise to a plausible inference and fair notice of infringement by identifying the accused products and alleging that the accused products meet "each and every element of at least one claim" of the asserted patents.  *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018).  *See also Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1355-56 (Fed. Cir. 2021) (opinion, *inter alia*, reversing the dismissal of two direct infringement claims because a plaintiff need not 'prove its case at the pleading stage.'").  This Court has explained "'the Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met.'"  *Barrier1 Sys. v. RSA Protective Techs., LLC*, 2021 U.S. Dist. LEXIS 193823, at *4 (D. Del. Oct. 7, 2021) (Noreika, J.) (citation omitted).  *See also 10X Genomics, Inc. v. Vizgen, Inc.*, 654 F. Supp. 3d 310, 318 (D. Del. 2023); *Express Mobile, Inc.*, 2021 U.S. Dist. LEXIS 161259, at *5 ("Contrary to Defendant's arguments, Plaintiff need not explain how each element of an Asserted Claim is met by the Accused Instrumentalities.  '[T]he Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met.' … Plaintiff has plausibly alleged direct infringement.  The merits of Defendant's arguments regarding claim construction and specific details of how the Accused Instrumentalities map to each claim element will be properly tested at future stages of this litigation.").

For example, in *Promos Techs., Inc. v. Samsung Elecs. Co.*, 2018 U.S. Dist. LEXIS 186276, at *11-12 (D. Del. Oct. 31, 2018), the Court found that "Plaintiff has specifically identified K4B2G0846D-HCH9 2 Gb DDR3 SDRAM as the infringing product and alleges that it practices each limitation of at least one claim in the '492, '559 and '201 patents.  Therefore, Plaintiff has

sufficiently pled a claim of patent infringement for the K4B2G0846D-HCH9 2 Gb DDR3 SDRAM." For the identified product, the 20-page complaint simply parroted the claim language and alleged that the product practiced those limitations, and the Court deemed that sufficient to plead a plausible infringement claim as to that product. *Promos Techs., Inc. v. Samsung Elecs. Co.*, cv-307-RGA, D.I. 1 at ¶¶ 24-31, 38-43.[1]

*Nncrystal US Corp. v. Nanosys, Inc.*, 2020 U.S. Dist. LEXIS 22462, at *7 (D. Del. Feb. 10, 2020), is also on point. The Court denied a motion to dismiss a claim for direct infringement. The Court found that the plaintiffs alleged a plausible direct infringement claim by identifying "specific products in support of their allegation that Defendant performs processes that meet all limitations of at least" one claim of the asserted patent. *Id.* at *9. The Court rejected the defendant's argument that the complaint was required to plead the "precise details of Defendant's infringing processes ...." *Id.* at *8. The Court also rejected, as unsupported, the defendant's argument that the pleading standard set forth by the Federal Circuit in *Disc Disease* only applies where the at-issue technology is simple. *Id.* at *6-7 ("Defendant posits that in contrast to the simple technology involved in the asserted patents in *Disc Disease*, the complexity of colloidal nanocrystal synthesis suggests a higher threshold for providing fair notice. ... Whether the technology in this case can be classified as simple or complex," "'fair notice' to the Defendant is at the heart of the 12(b)(6) inquiry ....").

Moreover, it is well settled that claim construction is "inappropriate on a motion to dismiss. 'To engage in the claim construction process upon review of a motion to dismiss would be to go

---

[1] The Court also found that the plaintiff had not sufficiently alleged direct infringement claims with respect to an "accused infringing class of products" that were not "identified by name" because the allegations of the complaint only parroted the claim language, but that finding has no application here given that OptiMorphix's Complaint specifically identifies the accused Oracle products by name. 2018 U.S. Dist. LEXIS 186276, at *13-14. *See also* D.I. 1 ¶¶ 79, 106, 135, 161, 183, 209, 230, 255.

beyond the scope of a court's traditional gatekeeping role in reviewing such a motion; it would instead amount to a more in-depth evaluation of the merits of a plaintiff's case.'" *Barrier1 Sys.*, 2021 U.S. Dist. LEXIS 193823, at \*7 (citations omitted). *See also Deston Therapeutics LLC v. Trigen Labs., Inc.*, 723 F. Supp. 2d 665, 670 (D. Del. 2010) ("While it is true that claim construction is a matter of law to be determined by the Court, the process for properly construing a patent claim is unsuited for a motion to dismiss."); *Novartis Pharms. Corp. v. Actavis, Inc.*, 2012 U.S. Dist. LEXIS 176445, at \*21-24 (D. Del. Dec. 5, 2012) ("This Court and other courts have repeatedly held that if a court is required to construe the meaning of claim terms and perform an infringement analysis in order to resolve a motion to dismiss or a motion for judgment on the pleadings, the motion should be denied, because this type of analysis is inappropriate at the pleading stage.").

A.     **The Complaint Adequately Alleges Direct Infringement Of The '314 Patent**

The inventions taught in the '314 Patent relate to network communication systems, and more particularly, to systems and methods for providing differentiated services within a network communication system. Asserted Claim 27 of the '314 Patent recites a system for "performing differentiated services within a network communication system, the system comprising:"

> a processor; and a memory unit, operably coupled to the processor, for storing data an instructions which when executed by the processor cause the processor to operate so as to: classify a connection that has been requested between the client and the server to determine whether the connection matches a predetermined service criteria, the predetermined service criteria associated with at least one of the plurality of service applications; form a first connection between the client and the service module and a second connection between the service module and the server in response to the connection matching the predetermined service criteria; and use the first connection and the second connection to redirect at least a portion of data communicated between the client and the server to the service application associated with the predetermined service criteria.

'314 Patent, Claim 27.

The Complaint plausibly alleges that the Oracle '314 Products, defined as Oracle Cloud

4

Infrastructure (including Oracle Traffic Management and Oracle Network Load Balancer) and Oracle Fusion Middleware Release 11g (11.1.1.9) and later (including Oracle Traffic Director 11.1.1.9 and later), directly infringe at least Claim 27 of the '314 Patent.  D.I. 1 ¶¶ 79-96.  The Complaint pleads that the Oracle '314 Products meet the limitations of Claim 27 of the '314 Patent as required under *Disc Disease* and its progeny.  *Id.*  For example, the Complaint alleges that the "memory unit in the Oracle '314 Products stores data related to connections, service applications, and other system elements.  In addition, the Oracle '314 Products store in memory instructions that guide the processor in classifying connections, forming connections, and redirecting data." *Id.* ¶ 83.  The Complaint also includes a screenshot illustrating that the Oracle '314 Products include processors and memory.  *Id.*  In addition, the Complaint includes allegations explaining how the Oracle '314 Products meet the other limitations of Claim 27.  *Id.* ¶¶ 84-92.

Oracle does not dispute that the Complaint plausibly pleads that the Oracle '314 Products meet many of the limitations of Claim 27 of the '314 Patent.  D.I. 9 at 5-6.  Instead, Oracle focuses on particular limitations and argues that the Complaint's allegations fail to "allege[] what in Oracle's products corresponds to the 'service module' or 'service application' or what 'predetermined service criteria' the Oracle products use to classify and redirect network traffic." *Id.* at 5.  Oracle is wrong.  For example, the Complaint identifies that the "predetermined service criteria can include a set of rules or conditions associated with various service applications."  *Id.* ¶ 86.  The complaint then includes an annotated excerpt from an Oracle technical presentation identifying "load balancer policies."  *Id.*  Similarly, the Complaint cites another Oracle document and identifies how the accused products "establish a subsequent connection between the service module and the server meeting the service requirements."  *Id.* ¶ 87.

Accordingly, the Court should deny Oracle's Motion with respect to the '314 Patent.

**B.     The Complaint Adequately Alleges Direct Infringement Of The '871 Patent**

The inventions taught in the '871 Patent generally relate to a communication node and corresponding method for processing data communications passing through the node between a first data network and a second data network.  Asserted Claim 1 of the '871 Patent recites a "method for processing data communication passing through a node between a first data network and a second data network, the method comprising" several enumerated steps.  '871 Patent, Claim 1.  The Complaint alleges that the Oracle '871 Products, defined as Oracle Cloud Infrastructure products and services (including Threat Intelligence and Network Firewall functionality), directly infringe at least Claim 1 of the '871 Patent.  D.I. 1 ¶¶ 163-171.  For example, Claim 1 recites, *inter alia*, "determining whether the data communication is to be suspended for service at the node based on the detected event."  '871 Patent, Claim 1.  And the Complaint alleges that the "Oracle '871 Products determine whether the data communication is to be suspended for service at the node based on the detected event.  Specifically, once an event associated with the data communication is detected by the Oracle '871 Products, the system evaluates the nature and severity of the event. The decision to suspend or allow the communication is based on rules and policies configured by the Oracle '871 Products."  D.I. 1 ¶ 165.  The Complaint also includes an excerpt from an Oracle Whitepaper showing how the IGW in the accused products takes a suspended communication and sends it to an "NVA instead of the destination."  *Id*. ¶ 165.   The Complaint goes on to cite and excerpt the Oracle API Reference and Endpoints documentation to show how the Oracle products "include further processing of a suspended data communication."  *Id*. ¶ 170.  The Complaint likewise alleges that the Oracle '871 Products meet the other limitations of Claim 1.  *Id.* ¶¶ 163-164, 166-170.

Oracle does not dispute that the Complaint plausibly alleges that the Oracle '871 Products directly infringe most of the limitations of Claim 1 of the '871 Patent.  D.I. 9 at 7.  Rather, Oracle

argues that the Complaint fails to allege specific facts showing how the Oracle '871 Products meet this limitation: "detecting return data communication arriving at the node from the second data network in response to the processed data communication from the first data network, and allowing the detected return data communication to pass through the node without processing the detected return data communication." *Id.  See also* '871 Patent, Claim 1.  But the law is clear that "'the Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met.'"  *Barrier1 Sys.*, 2021 U.S. Dist. LEXIS 193823, at *4.  The Complaint's allegations with respect to this limitation are sufficient.  *See* D.I. 1 ¶¶ 168-169.  And when viewed as whole, the allegations of the Complaint plausibly plead direct infringement of the '871 Patent.  *Id.* ¶¶ 163-167, 170.  Therefore, Oracle's Motion should be denied with respect to the '871 Patent.

### C.      The Complaint Adequately Alleges Direct Infringement Of The '169 Patent

The inventions taught in the '169 Patent are directed to solving the problem of inefficient caching of content, particularly when dynamic URLs are used to refer to the content.  Asserted Claim 1 of the '169 Patent recites, *inter alia*, a "method for indexing content in a cache data structure within a content cache, the method comprising" certain enumerated steps.  '169 Patent, Claim 1.  The Complaint alleges that the Oracle '169 Product, defined as Oracle Cloud Infrastructure (OCI), directly infringes at least Claim 1 of the '169 Patent.  D.I. 1 ¶¶ 185-200.  For example, Claim 1 of the '169 Patent has the following limitation: "receiving a content request from a user Internet-connected device."  '169 Patent, Claim 1.  The Complaint alleges that the Oracle '169 Product meets this limitation by alleging that the "Oracle '169 Products receive a request for content from a device connected to the Internet.  Specifically, when a user makes a request to the Oracle '169 Products, an HTTP request is sent over the Internet.  This HTTP request is received by the Oracle '169 Products, which are listening for incoming connections on the specific IP

address and port number assigned (usually port 80 for HTTP and 443 for HTTPS).  The request includes details such as the requested URL, HTTP method (e.g., GET, POST), headers, and any additional data."  D.I. 1 ¶ 185.  The Complaint also alleges that the Oracle '169 Product meets the other limitations of Claim 1 of the '169 Patent.  *Id.* ¶¶ 186-200.

Oracle does not dispute that the Complaint plausibly alleges that the Oracle '169 Product performs most of the limitations of Claim 1 of the '169 Patent.  *See* D.I. 9 at 7-9.  Instead, Oracle argues that the "use of a 'portion' of the requested content to generate a cache index is at the heart of claim 1. … Despite the centrality of this limitation, OM has not even attempted to plead that Oracle performs it."  *Id.* at 8.  Not so.  The Complaint alleges that the "Oracle '169 Products query a web server for a ***specific segment of content*** related to the user's content request.  Once the Oracle '169 Products have received and parsed the request, the Oracle '169 Products determine how to handle the request based on its configuration rules.  If the requested content is not available in the Oracle '169 Products caches, the Oracle '169 Products may act as a reverse proxy and forward the request to the appropriate origin server.  The web server processes this request and returns the requested content back to the Oracle '169 Products."  D.I. 1 ¶ 186 (emphasis added).  The Complaint further alleges that the "Oracle '169 Products identify one or more descriptors for the content corresponding to the user's request, where these descriptors include the ***particular content segment*** associated with the initial request."  *Id.* ¶ 187 (emphasis added).  In other words, the Complaint's use of the phrases "specific segment of content" and "particular content segment" corresponds to the "portion" element of Claim 1's limitations that Oracle wrongly argues is omitted from the Complaint.

Oracle also argues that the "complaint actually shows that Oracle uses the non-infringing URL-based approach that the '169 Patent admits is prior art …."  D.I. 9 at 8.  But that is also

wrong.  The Complaint explains in detail how the Oracle '169 Products "acting as a reverse proxy, receive a request and processes it according to the rules defined in the Oracle '169 Products' configuration files."  D.I. ¶ 189.  The specific functionality of the Oracle '169 Products goes well beyond the prior art and includes "comput[ing] an index related to the requested content by applying the identified descriptors to a hashing function."  *Id.* ¶ 188.  Further, the Complaint citing Oracle's documentation identifies the use of "AccessRuleCriteria" (*id*. ¶ 189), the "use a round-robin algorithm to distribute requests across multiple servers" (*id*. ¶ 192), and the processing of content "to identify characterization data that can be used to cache the content" (*id*. ¶ 194).  For each function identified in the accused Oracle '169 Products the Complaint references Oracle documentation that includes Oracle source code files, Oracle software development kit (SDK) documentation, Oracle Cloud Infrastructure reference documents.  *Id.* ¶¶ 185-189 and 192.

For these reasons, the Court should deny Oracle's Motion with respect to the '169 Patent.

### D.    The Complaint Adequately Alleges Direct Infringement Of The '021 Patent

The inventions taught in the '021 Patent are directed to solving the problem of accurately measuring the time needed to download a web page at an intermediate network node.  The '021 Patent "teaches the use of a method that includes acquiring current HTTP transactions, determining their relation to web browsing for a specific client, and evaluating whether they belong with the previous transactions set.  By grouping transactions into page units and computing a page unit time, the method provides a way to measure the Quality of Experience (QoE) of web browsing in real-time at an intermediate network node."  D.I. 1 ¶ 65.

The Complaint plausibly alleges that the Oracle '021 Products, defined as Oracle Cloud Infrastructure (OCI) and Oracle Cloud Management (OCM) (including Oracle IT Analytics and Application Performance Monitoring), directly infringe asserted Claim 1 of the '021 Patent.  *Id.* ¶¶ 232-246.  For example, Claim 1 recites, *inter alia*, "acquiring a current Hypertext Transfer

Protocol (HTTP) transaction." '021 Patent, Claim 1.  The Complaint plausibly alleges that the Oracle '021 Products meet this limitation of Claim 1.  As the Complaint alleges, the "Oracle '021 Products capture an ongoing Hypertext Transfer Protocol (HTTP) interaction.  The Oracle '021 Products ascertain if the active HTTP interaction is associated with web browsing."  D.I. 1 ¶¶ 232-233.  The Complaint also includes a screenshot of an excerpt from the Oracle Cloud Infrastructure Blog annotated to show that the Oracle '021 Products enable transaction level webpage load analysis.  *Id.* ¶ 233.  The Complaint likewise alleges that the Oracle '021 Products meet the other limitations of Claim 1 of the '021 Patent.  *Id.* ¶¶ 234-246.  These allegations sufficiently state a claim for direct infringement of the '021 Patent.

Indeed, Oracle does not dispute that the Complaint plausibly alleges that the Oracle '021 Products practice most of the limitations of Claim 1 of the '021 Patent.  D.I. 9 at 10.  Instead, Oracle focuses on one element of one limitation of Claim 1 and argues that the Complaint fails to plausibly allege that the Oracle '021 Products "practice this critical 'boundary' limitation."  *Id.*  To start, Oracle relies in part on the file history of the '021 Patent to support its argument.  *Id.*  But "the file history of the … ['021] patent, which is not referenced in the complaint, may not be considered at this stage of the proceedings …."  *Par Pharm., Inc. v. Hospira, Inc.*, 2018 U.S. Dist. LEXIS 114588, at *6-7 (D. Del. Apr. 27, 2018).  In any event, contrary to Oracle's argument, the Complaint plausibly alleges that the Oracle '021 Products meet the following limitation of Claim 1: "if the current HTTP transaction does not belong with the previous transactions set, creating a boundary of a page unit that includes the HTTP transactions of the previous transactions set for computing a page unit time."  '021 Patent, Claim 1.  As alleged in the Complaint, "[w]hen the active HTTP interaction is deemed unrelated to the historical transaction set, the Oracle '021 Products delineate a page unit comprising the archived HTTP interactions for the purpose of

calculating page unit time.  In cases where a transaction is evaluated as not belonging to the current set, a 'page boundary' is created by the Oracle '021 Products.  This boundary serves as a cutoff for metrics calculations like average time spent on a page or session."  D.I. 1 ¶¶ 241-242.  These allegations plausibly plead that the Oracle '021 Products meet the at-issue "boundary" limitation of Claim 1 of the '021 Patent.  Although Oracle complains about the level of factual detail concerning "what the 'boundary' in the accused Oracle products is or how it is created," the detail provided in the Complaint is more than sufficient to put Oracle "'on notice of what activity … is being accused of infringement.'   That is enough at this stage of the litigation." *CoolTVNetwork.com, Inc. v. Facebook, Inc.*, 2019 U.S. Dist. LEXIS 157841, at *14 (D. Del. Sep. 16, 2019) (citation omitted).

For all these reasons, Oracle's Motion should be denied with respect to the '021 Patent.

### E.    The Complaint Adequately Alleges Direct Infringement Of The '273 Patent

The inventions taught in the '273 Patent relate to data communication protocols, and more particularly, to systems and methods for data transport acceleration and management within a network communication system.  Asserted Claim 1 of the '273 Patent recites a "method of transferring data from a sender to a receiver in a communication network, the method comprising:" "establishing a connection between the sender and the receiver; measuring round trip times of data packets sent from the sender to the receiver; determining a congestion window parameter that specifies a maximum number of unacknowledged data packets that may be sent to the receiver; and transmitting additional data packets to the receiver in response to expiration of a transmit timer, the period of the transmit timer based on the round trip time measurements and the congestion window parameter."  '273 Patent, Claim 1.

The Complaint plausibly alleges that the Oracle '273 Products, defined as Oracle Linux Release 7.5 and later on x86-64 architectures and Oracle Linux Release 7.5 and later on 64-bit

ARM architectures, infringe at least Claim 1 of the '273 Patent.  D.I. 1 ¶¶ 106-125.  The Complaint amply explains how the Oracle '273 Products meet the limitations of Claim 1 of the '273 Patent. *Id.*  For example, the Complaint alleges that the Oracle '273 Products measure "round trip times of data packets sent from the sender to receiver."  '273 Patent, Claim 1.  As the Complaint alleges: "The Oracle '273 Products measure round trip times (RTT) of packets sent between a client and server over a network.  Specifically, the Oracle '273 Products measure the round-trip propagation time (RTprop) using the minimum round-trip time (RTT) for the connection by keeping track of the lowest observed RTT in the recent past.  This value represents the round-trip propagation time (RTprop) of the connection."  D.I. 1 ¶ 111.  The Complaint likewise contains particularized allegations concerning how the Oracle '273 Products meet the other limitations of Claim 1.  *Id.* ¶¶ 108-110, 112-121.

Given the Complaint's well-pled allegations of direct infringement, Oracle does not dispute that the Complaint plausibly pleads that the Oracle '273 Products meet almost all of the limitations of Claim 1 of the '273 Patent.  D.I. 9 at 11.  Rather, Oracle narrowly argues that the "complaint fails to plead any facts suggesting that Oracle's products include a 'transmit timer' as required by the claims."  *Id.*  But the law is clear that "'the Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met.'"  *Barrier1 Sys.*, 2021 U.S. Dist. LEXIS 193823, at *4.  With respect to the "transmit timer" element, the Complaint adequately alleges that the "Oracle '273 Products transmit additional data packets to the receiver in response to a transmit timer expiration.  The period of the transmit timer is based on the round-trip time measurements and the congestion window parameter."  D.I. 1 ¶ 121.  Nothing more is required in light of the other well-pled, fact-specific allegations alleging direct infringement of Claim 1 of the '273 Patent, which Oracle does not even attempt to challenge.  Therefore, Oracle's

Motion with respect to the '273 Patent should be denied.

**F.    The Complaint Adequately Alleges Direct Infringement Of The '901 Patent**

The inventions taught in the '901 Patent generally relate to methods and systems for minimizing packet bursts. The '901 Patent teaches implementing a packet scheduler layer between the network layer and the transport layer of a device, which smooths the delivery of TCP packets by delaying their delivery, thus addressing the challenges posed by the rapid and bursty transmission of data packets in network communications. D.I. 1 ¶ 55. Asserted Claim 1 of the '901 Patent teaches a "computer-implemented method performed at a packet scheduler layer on a first device, wherein the packet scheduler layer is between a network interface layer and a transport layer, the method comprising" several enumerated steps. '901 Patent, Claim 1. The Complaint sufficiently alleges that the Oracle '901 Products, defined as Oracle Communications Session Border Controller Releases S-CZ7.2.0 and later, directly infringe at least Claim 1 of the '901 Patent. D.I. 1 ¶¶ 211-221. For example, Claim 1 teaches the following step: "storing, at the first device, information about the connection between the first device and the second device, the information including a last packet delivery time for the connection." '901 Patent, Claim 1. The Complaint alleges that the Oracle '901 Products perform this step as follows: "Oracle '901 Products store information about the connection between a first device and a second device. The information stored by the Oracle '901 products include a last packet delivery time for a specific connection/link. Specifically, the Oracle '901 products store information about the network connection, such as metrics regarding packet delivery, latency, and jitter, to optimize the path selection and improve performance." D.I. 1 ¶ 213. The Complaint also includes an excerpt of documentation for the Oracle Communications Session Border Controller Configuration Guide Release S-Cz9.1.0 that illustrates the types of information about the network connection that is stored by the Oracle '901 Products. *Id.* The Complaint contains similarly detailed allegations

13

concerning how the Oracle '901 Products meet the other limitations of claim 1 of the '901 Patent. *Id.* ¶¶ 211-212, 213-217.  As such, the Complaint pleads a plausible claim for direct infringement of the '901 Patent.

Oracle wrongly argues that this direct infringement claim should be dismissed because the Complaint "alleges facts inconsistent with the claim language, thereby rendering the claim implausible."  D.I. 9 at 12.  Oracle contends that the Complaint "is inconsistent with the claim language because it pleads that the delay calculation occurs *before* determining 'burstiness,' not *after* as required by the claims."  *Id.* (emphasis in Mot.).  Not so.  The Complaint alleges that the "Oracle '901 Products determine if a TCP packet is part of a bursty transmission on the connection by looking at whether a burst count for the connection is greater than a burst-count threshold." D.I. 1 ¶ 214.  The Complaint further alleges that "Oracle '901 Products calculate a delay time for a connection using the last packet delivery time *after* determining that the TCP packet is part of a bursty transmission."  *Id.* ¶ 215 (emphasis added).  These allegations are consistent with the language of Claim 1.  Oracle argues that the following additional allegations in Paragraph 215 are inconsistent with the claim language: "the Oracle '901 Products measure latency and jitter for each connection/link.  This measurement is then used to determine the burstiness of a TCP packet transmission."  D.I. 9 at 12.  Oracle is incorrect. Oracle is incorrect in arguing that there is an inconsistency between the language in paragraph 215 of the Complaint and the sequence of operations detailed in claim 1 of the '901 patent.  When the processes described in the Complaint is viewed as part of a continuous operation flow within the accused Oracle Session Border Controller, it becomes clear that functionality described in paragraph 215 of the Complaint and the steps identified by Oracle in claim 1 of the '901 patent describe different aspects of the same process.  Both the Complaint's allegations and the claim describe the same sequence of operations:

14

analyzing transmission characteristics to determine burstiness and then using this determination to calculate and apply a delay for bursty packets.

Oracle also argues that the Complaint's "allegation that the Oracle products meet the claim requirement of 'delaying delivering the TCP packet to a receiving layer based on the calculated delay time, wherein the receiving layer is one of the network interface layer or the transport layer that is not the sending layer' is also inconsistent with the claim language."  D.I. 9 at 12.  To make this argument, Oracle engages in improper claim construction and argues that "the network interface layer is below the transport layer."  *Id.* at 12-13.  From there, Oracle argues that "[b]ecause the accused Oracle 'stream' is … above the transport layer, the 'stream' cannot be 'one of the network interface layer or the transport layer.'"  *Id.* at 13.  This is nothing more than a premature claim construction argument that should not be decided in the context of a motion to dismiss.  *See Barrier1 Sys.*, 2021 U.S. Dist. LEXIS 193823, at *7; *Deston Therapeutics LLC*, 723 F. Supp. 2d at 670.

For all these reasons, Oracle's Motion with respect to the '901 Patent should be denied.

### G.    The Complaint Adequately Alleges Direct Infringement Of The '418 Patent

The inventions taught in the '418 Patent relate to network communication systems, and more particularly, to systems and methods for transcoding multimedia information within a network communication system.  Asserted Claim 1 of the '418 Patent teaches a "method for transcoding audio information using a service module disposed within a network communication system," the method comprising several steps.  '418 Patent, Claim 1.  The Complaint plausibly alleges that the Oracle '418 Products, defined as Oracle WebRTC Session Border Controller and Oracle *Communications* Session Border Controller Releases S-CZ7.2.0 and later, directly infringe at least asserted Claim 1.  D.I. 1 ¶¶ 137-148.  For example, the Complaint alleges that the "Oracle '418 Products intercept digital multimedia information transmitted between a sender and a

recipient, where the data is encoded at the sender using a primary transmission rate," as required by Claim 1, and includes a screenshot of Oracle documentation of the *Oracle Session Border Controller Configuration Guide Release S-Cz8.4.0* showing how this limitation is met by the Oracle '418 Products. *Id.* ¶ 137. The Complaint contains similar allegations concerning how the Oracle '418 Products meet other limitations of Claim 1 of the '418 Patent. *Id.* ¶¶ 138-148. Viewed together, the Complaint's allegations plausibly allege a claim for direct infringement of the '418 Patent.

Oracle argues that the Complaint does not plausibly plead that the Oracle '418 Products perform the step of "estimating an available transmission rate of the second channel, wherein the estimating comprises measuring trip time of data packets communicated between the service module and receiver via the second channel." D.I. 9 at 14. *See also* '418 Patent, Claim 1. Not so. The Complaint alleges that the "Oracle '418 Products contain functionality for estimating an available transmission rate of a receiver-side connection. This step is critical for dynamically adapting the multimedia stream to match the capabilities of the receiving end and the conditions of the network. The estimation process performed by the Oracle '418 Products involves measuring the trip time of data packets communicated between the service module and the receiver via the second channel. By accurately gauging the available bandwidth, the Oracle '418 Products can dynamically adapt to the multimedia stream." D.I. 1 ¶ 140. This is sufficient under *Disc Disease* and its progeny.

Although Oracle also asserts that the Oracle documentation cited in the Complaint "say[s] nothing about estimating transmission rates," that is incorrect. D.I. 9 at 14. The Complaint identifies that estimated transmission rates are used by the "policy parameter" in the Oracle '418 products and the policy parameter is then used to trigger the use of a specific codec policy. The

Complaint cites Oracle documentation from the Oracle Session Border Controller Configuration Guide that states that, "a conditional value includes a target codec paired with a requirement for executing the action . . . according to this value pair when the ingress SDP or a previous manipulation to the SDP meets the condition criteria." *Id*. ¶ 143.

Accordingly, Oracle's Motion with respect to the '418 Patent should be denied.

### H.    The Complaint Adequately Alleges Direct Infringement Of The '664 Patent

The '664 Patent is generally directed to adaptive bitrate management for streaming media over packet networks. Specifically, it aims to solve the problem of delivering multimedia content over capacity-limited, shared wireless links. Asserted Claim 9 of the '664 Patent teaches a method comprising the following steps: "receiving media data that includes audio media data and video media data; receiving an optimal session bitrate; allocating the optimal session bitrate between the audio media data and the video media data to produce an optimal audio bitrate and an optimal video bitrate; encoding the audio media data using the optimal audio bitrate; encoding the video media data using the optimal video bitrate; and providing the encoded audio media data and the encoded video media data for transmittal to a terminal." '664 Patent, Claim 9. The Complaint contains specific allegations alleging the manner in which the Oracle '664 Products, defined as Oracle Cloud Infrastructure (OCI) (including Media Services, Media Streams, and Media Flow functionality), directly infringe at least Claim 9 of the '664 Patent. D.I. 1 ¶¶ 257-272. For example, the Complaint alleges that the "Oracle '664 Products accept and/or gather media data, which comprises both elements of audio and video information," and includes a screenshot of a YouTube video entitled *Introducing video streaming services from Oracle* showing that the Oracle '664 Products perform the step of receiving media data that includes both audio media data and video media data. *Id.* ¶ 257-258. The Complaint likewise pleads how the Oracle '664 Products meet the other limitations of Claim 9. Together, these allegations plead a plausible claim for direct

infringement of the '664 Patent.  *Id.* ¶¶ 259-268.

Oracle does not dispute that the Complaint plausibly alleges how the Oracle '664 Products meet most of the limitations of asserted Claim 9.  D.I. 9 at 16.  Oracle instead argues that the Complaint fails to plausibly allege that the Oracle '664 Products perform the steps of "encoding the audio media data using the optimal audio bitrate" or "encoding the video media data using the optimal video bitrate."  *Id.  See also* '664 Patent, Claim 9.  Oracle asserts that the "document on which OM relies for its allegations actually undermines OM's claim, because the excerpt discusses only *transcoding* data; it mentions nothing about *encoding* data."  D.I. 9 at 16 (emphasis in Motion).  In Paragraph 260 of the Complaint, OptiMorphix alleges that the "Oracle '664 Products perform the step of receiving an optimal session bitrate.  This step entails obtaining a pre-calculated or pre-defined bitrate that is considered optimal for the media session."  D.I. 1 ¶ 260.  Included in Paragraph 260 of the Complaint is an excerpt from the Oracle Cloud Infrastructure Blog showing how the Oracle Cloud Infrastructure contains functionality where video files are encoded as part of a media workflow. Encoding, in the context of video processing, refers to the conversion of video files from one format to another.  This is often done to compress the files (making them easier to store or transmit) or to prepare them for playback on various devices and platforms, which may require specific formats or codecs.  The excerpt outlines a series of tasks within a media workflow that includes the encoding process,

Oracle complains that the excerpt of the documentation cited in Paragraph 260 does not expressly mention "encoding," but that is not what the documentation is being relied on to show. Oracle simply ignores Paragraph 265 of the Complaint, which alleges that the "Oracle '664 Products transmit the video media data with the use of the optimal video bitrate through encoding," and includes a diagram from the Oracle Cloud Infrastructure Blog that is annotated to show that

the Oracle '664 Products enable the encoding of video at optimal bitrates and the transmission of the optimally encoded video.  *Id.* ¶ 265.  Contrary to Oracle's argument, the Complaint plausibly alleges, including through the use of an annotated diagram in Paragraph 265, that the Oracle '664 Products perform the step of encoding as taught in asserted Claim 9 of the '664 Patent.[2]

Finally, Oracle argues that the Complaint lacks factual allegations to show that the Oracle '664 Products perform the step of "allocating the optimal session bitrate between the audio media data and the video media data to produce an optimal audio bitrate and an optimal video bitrate." D.I. 9 at 16-17.  *See also* '664 Patent, Claim 9.  The Complaint pleads that the "Oracle '664 Products perform the step of allocating the optimal session bitrate between the audio media data and the video media data to produce an optimal audio bitrate and an optimal video bitrate.  In this process, the total available optimal session bitrate is divided into two portions, aligning with the requirements for audio and video quality."  D.I. 1 ¶ 262.  This is sufficient, as the Court has made clear that "'the Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met.'"  *Barrier1 Sys.*, 2021 U.S. Dist. LEXIS 193823, at *4.

For all these reasons, the Court should deny Oracle's Motion with respect to the '664 Patent.

## V.   THE COMPLAINT SUFFICIENTLY PLEADS CLAIMS FOR INDIRECT INFRINGEMENT

Oracle argues that the Complaint fails to plead claims for indirect infringement because its claims for direct infringement supposedly fail.  D.I. 9 at 17.  Oracle's argument fails because, as explained in Section IV, the Complaint's direct infringement claims are plausible and cognizable.

---

[2] Oracle relies on the Abstract of the '418 Patent to make assertions about the difference between transcoding and encoding.  D.I. 9 at 16.  But asserted Claim 9 of the '664 Patent does not include a separate transcoding step.

## VI.   THE CASE IS NEITHER BURDENSOME NOR ADMINISTRATIVELY COMPLEX

Finally, Oracle argues that "this case will consume a disproportionate amount of the Court's resources as currently pleaded" because the "eight asserted patents cover a diverse set of fields." D.I. 9 at 17.  Based on this argument, Oracle "requests that the Court dismiss the case and require OM [OptiMorphix] to file an amended complaint that plausibly alleges infringement." *Id.* at 18.  Oracle's argument fails as unsupported.  A case in which eight patents are asserted is not *a fortiori* burdensome or administratively complex, and even if it were, there is no authority for dismissing well pled patent infringement claims like those in the Complaint simply because a defendant believes the case could be "more complex than a more typical case." *Id.* at 17.

## VII.   CONCLUSION

OptiMorphix respectfully requests that the Court deny Oracle's Motion in its entirety.[3]

Dated:  February 8, 2024

OF COUNSEL:

Dorian S. Berger
Daniel P. Hipskind
Erin E. McCracken
BERGER & HIPSKIND LLP
9538 Brighton Way, Ste. 320
Beverly Hills, CA 90210
(323) 886-3430
dsb@bergerhipskind.com
dph@bergerhipskind.com
eem@bergerhipskind.com

BAYARD, P.A.

/s/     *Stephen B. Brauerman*
Stephen B. Brauerman (#4952)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com

*Attorneys for Plaintiff*
*OptiMorphix, Inc.*

---

[3] In the event the Court finds OptiMorphix's pleading deficient in any way, OptiMorphix requests leave to amend its Complaint to address any deficiencies.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).